May it please the court, my name is Bo Brindley and I represent the defendant appellant Roberto Macias. Mr. Macias appeals his conviction following a jury trial at which the district court issued the deliberate indifference or willful blindness jury instruction over his objection and it is with that issue that I would like to begin. Mr. Macias' case is an unusual one in that Mr. Macias came into court and unambiguously admitted that he believed he was engaging in illegal conduct, that his actions were taken with the belief and knowledge that he was intending to commit a crime but that he was affirmatively misled about the nature of the scheme that he was involved and in that limited set of circumstances which seldom arises when we're talking about deliberate indifference it is inappropriate for the deliberate indifference instruction can be given unless there can be identified some evidence of some specific act that the defendant either avoided taking in order to maintain his misunderstanding or some deliberate act that he took to maintain this misunderstanding but throughout the totality of the briefing on this issue both in the district court where we address this issue and here before this court the the government has never been able to identify a single action that Mr. Macias took to deliberately avoid knowledge that he was participating in a drug conspiracy rather than a human smuggling conspiracy. Each action he took was certainly consistent with the conduct of a person who is engaged in clandestine illegal activity and because he plainly admitted that he believed his activity was illegal and believed it to be human smuggling was told that it was rather than drug smuggling there's no space for the deliberate indifference theory in this case. What the government's arguments really boil down to is the notion that there was evidence that should have made Mr. Macias suspicious that this was drug trafficking rather than human smuggling but this case this court has addressed that issue in the past this court has previously said that evidence giving rise to what should be a defendant's suspicion that leads that defendant apparently being indifferent to the suspicion is insufficient to support the issuance of the deliberate indifference instruction and that's the position this court took in the C.S.C. Alka case, in the Ellie Myers case, and in the Tanner case. Did he know how much money he was carrying each time? He was not carrying the money himself. He owned a passenger bus business that transported people to and the person, he employed another person that was working for him and the amounts varied. Sometimes it was hundreds of thousands of dollars, sometimes it was millions of dollars and I think it's detailed in the briefing, the different amounts at different times. Mr. Macias testified to explicitly believing and based on his prior experience back in the 1980s that he was dealing with money coming from human smuggling as he had been convicted for that before and was familiar with the process. The government's arguments seem to suggest that he should have seen that there were differences. This time it was more money, this time it was more secretive. All of that is consistent with him dealing now with a more well-developed and lucrative smuggling operation than before, but nothing about that identifies any specific source of curiosity that he had to willfully suspend, which is what would be required for their argument to give avoidance instruction. As I indicated before, this court has repeatedly said the question isn't whether the defendant should have been suspicious. The question is whether there is evidence of what acts the defendant deliberately avoided taking in order to maintain a lack of knowledge and there is no evidence of that in this record. In fact, every one of the cases the government's citing regarding the suspension of curiosity is a case in which a person is confronted with significant evidence, obvious evidence, that something illegal is going on and yet they attempt to claim that they avoided any guilty knowledge at all. There is no case the government cites where the defendant came in and stepped forward and admitted, yes, I knew it was a crime, I thought I was committing a crime, but I was misled about what the crime was. In that limited set of circumstances, there's really no place for the deliberate indifference instruction. And the district court's comments on the matter suggested that that distinction between suspicion, indifference, and deliberate avoidance was not clear to the district court. For example, the district court stated when discussing this issue, if somebody knows that there is, you know, illegal activity, it seems to me that's part of the way there, then it's a question of do they have what things may be including that indicate that there is, if he doesn't ask more questions, that's conscious avoidance. Well, this court has been clear, the failure to investigate is not what deliberate avoidance is about. Deliberate avoidance is about situations where the evidence gives rise to or sheds light on specific actions or things the defendant deliberately avoided doing or deliberately did in order to maintain a lack of understanding with respect to guilty knowledge. That just didn't happen in this case. This case is not the kind of case in which deliberate indifference is an issue. How much did he get paid? He got paid about $10,000 for, I believe, I don't remember the exact number, but I think he got paid approximately $10,000 for setting up one of these transfers of currency. So he gets $10,000, whether it's $100,000 or $2.5 million. I'm not sure if it, I think it may have varied, Judge, I don't remember the specific number of how much he made per transaction, but with respect to the whole thing, he gave a detailed testimony indicating this is how money is packaged when they use, do human smuggling out of Chicago, and he talked about that whole process, and there's no evidence that there was something he didn't do or something he did do to try to think it was human smuggling rather than drug smuggling. I think the other thing that's important here is there isn't any evidence indicating that he had reason to believe that his exposure would be worse for large-scale drug smuggling than it would be for large-scale human smuggling. In other words, there's no reason in the record that suggests why he would try to maintain a misunderstanding in this instance. Now it may be, and I think it boils down to this, the real issue is here is if his statements about believing it was alien smuggling rather than drug smuggling were false fabrications, then he lied. And if that's the case, there's no space for deliberate indifference. He's just lying. If, on the other hand, he did believe that, then he had a mistaken belief about the kind of illegal conduct in which he was engaged because he was misled, then he didn't have the appropriate knowledge. Either way, the deliberate indifference theory is not implicated in this case. And the bigger problem with this case, as far as deliberate indifference goes, is that because a deliberate indifference instruction was given here, there's no way to determine whether the jury in this case convicted him based on a theory of direct knowledge or on a theory of deliberate indifference. And it's made even worse here because in this case, we had expert testimony, which was a separate issue raised in the brief. But that expert testimony talked about the way that, objectively speaking, a federal agent's opinion about how human trafficking networks really do work. And so when you combine that with a deliberate indifference instruction, you have a jury that's put in the position of thinking that they're maybe being compelled to convict, likely being compelled to convict Mr. Macias because he didn't have correct, he was objectively wrong about how these human trafficking groups work and should have done more to find out. And that's the concern about negligence coming in that has led this court to continually caution that the deliberate indifference instruction must only be given with caution and only when there is evidence of deliberate acts that the defendant avoided taking or did take in order to maintain a lack of knowledge. But he doesn't get the difference, I mean, he admits, he tries to admit that he thought this was all illegal and human trafficking. Yes. And the only distinction that the expert came up with is that human trafficking doesn't generate near this much cash. He did, and one of the issues that comes up with that expert is whether or not his testimony is relevant at all is raised in our briefs because the question before the jury was Mr. Macias' subjective beliefs, and there was no evidence that he would have had any knowledge or information about the things on which the expert's opinions were based. And so we maintain the position the expert's opinion should not have been allowed. But with that, I'd like to reserve any balance of time unless there are other questions. Why did you decide not to challenge the sentence? We did not challenge the sentence because the sentence was below the guideline range, Judge. The guideline range was 360 months to life. But it's 25 years, right? Yes. And he's what? He's in his late 40s, isn't he? He's at least in his mid-40s, somewhere between 45 and 50, Judge. Well, 25 and 45 is 70. It is. Well, you know, there's a concern, there's a literature about elderly prisoners. Yes, and we raised the issue of his age in the sentence when we did the sentencing, Judge, but we did not see any specific failure in terms of, other than just saying the sentence was objectively unreasonable. But because it was five years below the guidelines, we didn't believe we had a good basis there. Okay, well, thank you very much. Before you sit down, one other question. Yes, Your Honor. Your brief just asks for a reversal, but I don't understand you to be contesting the conviction under Section 1960 for unlicensed money transmission. No, Your Honor. We're asking for reversal of the conspiracy conviction only, and that the case be remanded for further proceedings on that issue. And then we would have to obviously have a different sentencing on the money transfer, because the guidelines are all different. Thank you. Thank you, Your Honor. Ms. Welch? May it please the Court. Catherine F. Welch on behalf of the United States of America, the appellee. The District Court did not abuse its discretion in issuing this circuit's pattern instruction on willful blindness. There was ample evidence presented that established that the only way that Macias could not have known that he was aiding a narcotics trafficking conspiracy was if he was willfully blind to what was going on around him. This Court's cases instruct that Macias cannot escape criminal liability if he strongly suspected that he was involved in criminal dealings. Well, the problem is that the defense conceded that he thought he was involved in criminal dealings. There was just a dispute about what the underlying crime was, and you can imagine others. Maybe he was smuggling money from the smuggling of fake watches, right? Maybe he was smuggling money from some other source. So he concedes that he knows this is illegally sourced money. He just doesn't know which illegal source it is. Why does that lead to a conclusion that the source was drugs, that he knew or should have known that the source was drugs? The evidence here, Your Honor, is that the defendant was a trusted member of this conspiracy. He had responsibility that was high. He was responsible for the movement of millions and millions of dollars of drug money. He spoke directly to the people at the highest levels of the cartel, and those facts are facts from which the jury... I know, but why did you need the ostrich instruction? The ostrich instruction was necessary in light of the defendant's testimony. I don't understand that. The jury didn't have to believe his testimony. You certainly had evidence, you know, circumstantial evidence, but convincing evidence that he knew this was drugs. You don't need an ostrich instruction for that. The jury was entitled to disbelieve Macias' testimony, and that's true. But the jury also could have believed Macias' testimony and could have said, okay, this person believed, you know, this person was told this is human smuggling. However, Macias' testimony established that the information that he had, the experience that he had in the late 80s and early 90s, was very different from the experience involved in the offense conduct. And so those differences were red flags that this court has contemplated in its previous... The ostrich instruction is designed for cases where a person takes... makes definite steps to avoid learning the horrible truth that he suspects. I mean, we had one case where the defendant knew that there was... I think it was drug trafficking also going on in a house that he had rented to people. So what he did was when he, although his ordinary, from where he was now living, to his work would have taken him right past his house, he took a circuitous route so he would never see evidence of what was going on in his house, right? Now, that doesn't seem to be what's involved here. Here, Your Honor... It's not that he, you know, put his fingers in his ears when anyone ever started to talk about what they do, right? That's true, Your Honor. He didn't put his fingers in his ears. That would be physical evidence that he was avoiding what was happening. He would be putting blinders on. This court has contemplated that a defendant can avoid knowledge by purely psychological avoidance. And that psychological... What does that mean? I don't understand. The psychological avoidance, Your Honor, is the ignoring of these red flags, the cutting off of one's natural curiosity. So here, for instance... I don't get that. Cutting off your natural curiosity? What does that mean? That means that in this case, for example, Mr. Macias was paid, there's evidence that Mr. Macias received $10,000 for picking up the telephone and telling his courier, you need to talk to Flacco, here's his phone number, and hanging up the telephone. Now, he testified that was consistent with his prior experience with human smuggling. But the evidence in his own testimony established that when he was previously involved with human smuggling, he was on the ground. Right, exactly, which suggests he's lying. It doesn't say anything about his suppressing knowledge. It could suggest that he's lying. But I don't understand the suppressing knowledge. You say to yourself, I'm not going to think about something? That's ridiculous, right? I disagree. Nobody's like that. In this case, the defendant testified, my experience in the late 80s and 90s was one thing. My experience during the offense conduct was completely different. Before, I knew the people who were involved. Right, and he's lying. Okay, but what does it have to do with psychological suppression of curiosity? I don't get that. The jury is entitled to infer from the cutting off of their curiosity. I think it sounds like nonsense. I don't think there is such a phenomenon as suppressing one's curiosity. I understand what you're saying, Your Honor, and the way that this works in the psychological avoidance context is that the person is cutting off their curiosity. Is there some literature on psychological avoidance? Or is this something the government is made of? This is in this court's precedents, Your Honor, in this court's cases. Is it based on some psychological studies of people suppressing their curiosity? I don't know the answer to that, Your Honor, but what I can say is that not asking questions in the face of these red flags is evidence from which the jury is entitled to infer that the person... I don't understand. Why should he ask questions? He's being paid a lot of money. Why does he care what they're spotting? He cares because he's involved at the highest levels of this conspiracy. He's involved with... If he's involved at the highest level, then he has actual knowledge. That's inconsistent with the claim that he's avoiding knowledge. And the government argued both of those theories at trial. Like Judge Posner, I don't understand psychological avoidance or anything like that. If you have a statute that makes a particular kind of knowledge harmful because it leads to a criminal penalty, then people will avoid acquiring that particular kind of knowledge. And an ostrich instruction is appropriate if they do something concrete to avoid acquiring that knowledge. But otherwise, one would think, if you can't show that a person had the knowledge, that the right statute for prosecution is the money laundering statute, which allows a conviction, if you wander, for any of this enormously long list of crimes. In this case, the prosecutor voluntarily undertakes to show that the defendant knew that the crime was drugs rather than the whole money laundering list. That's something of a puzzle, but if you undertake to show that, then one would think you have to show that. And that's what the government proved in this case, Your Honor. Was there a reason, at least one you can discuss in public, about why this wasn't a money laundering prosecution? I do not have that information, Your Honor. And it's not contained in the record. The evidence here was that this defendant was charged with the responsibility for moving millions and millions of dollars for a cartel that was moving drug proceeds. He was trusted to move vast amounts of money. He was trusted to manage someone who was moving vast amounts of money. The evidence was that he knew exactly how much money was coming back from the United States to Mexico, coupled with his previous experience in human smuggling, as opposed to what he experienced in this particular offense. And those were different because the first time around, he knew the folks he was involved with. He knew their names. He knew their roles. They talked about exactly what they did and how they did it. He was paid a small amount of money that he shared with other people. In this instance, he testified that he didn't know the other people involved in this conspiracy. He had a very defined role, which was simply to pick up the phone, receive telephone calls, pass along the information. He didn't know any of these other people other than knowing their nicknames. These were all very different from what he experienced the first time. And that shows that by ignoring those differences, he ignored the red flags that were there. He cut off his curiosity because that would tell someone, hey, this is different from what I was told. You don't mean he cut off his curiosity. You mean he didn't ask questions. So why should he ask questions? Why would he care what was being smuggled? He just cares about being paid. Once he agrees to be involved in this conspiracy, which is what he did when he was approached and asked to be involved, then he is responsible for what he's agreed to do. And in this case, that was being involved with trafficking, or excuse me, with trafficking narcotics and moving that money. This has nothing to do with what the instruction says. He deliberately avoided the truth. In this case, the jury was entitled to infer that by ignoring those differences, by not asking any questions, by not following up in a way that a person would who had had the experiences that this defendant had. Why do you say that? Why do you think these criminals ask each other questions? You're offered money to smuggle, and the person who offers you the money, the generous money, he doesn't tell you what he's smuggling. So are you going to start being nosy? Say, well, I don't know. You're paying me a lot, but what am I smuggling? I want to know what I'm smuggling. Some people might want to know. Others would say, I'm going to get in trouble with these guys if I'm nosy. They didn't tell me what they're paying me for. I better not ask. And that right there is, in fact, willful blindness. It's having a strong position. Well, that's absurd. Now you're saying there's some sort of duty to ask questions? This is new. This is novel. You're actually imposing a legal duty with criminal sanctions to ask questions whenever you're hired to engage in a criminal act? Generally speaking, no. In this case, the defendant admitted, I knew that I was involved in something that was criminal. Of course he knew. The question is, did he know what? Now, I mean, you have evidence that he did know. But I don't understand the instruction. I just don't get it. The instruction imposes on criminals a duty to determine exactly what they're being hired to do. No such duty. And the instruction itself does, in fact, instruct the jury that they could not convict the defendant on the basis of negligence, on the basis of carelessness, on the basis of a failure to look further. But they can on the basis that he's not curious enough? They can on the basis that he saw these red flags and he willfully blinded himself to them. What do you mean willfully blinded? He just didn't ask a question. Why is that willful blindness? Because it was evidence. You think any time a person fails to ask a question, he's being willfully blind? I do not. I do think that this defendant, when faced with the information that he had in front of him, was, in fact, willfully blind by not following up with the people who asked him to do these things. Do you think banks have to ask their customers where their money comes from? No. You don't think they would be accused of psychological avoidance, that they might want to know whether their customers are reliable sorts with legitimate sources of income? In the absence of red flags like there were present here? No, Your Honor, I do not. In the absence of red flags, like the customer isn't explaining where his income comes from? No, Your Honor. I'm getting worried from your argument that what you're suggesting is that businesses really need to know where their customers' money comes from or what they're doing with their products. If a grocer sells things to somebody who might be an illegal alien, he might be accused of supporting an illegal presence in the U.S. Actually, we had a prosecution of that sort just last fall where somebody was convicted of that crime. We reversed, but it sounds like we're having the same kind of argument here. The government's position in this case, Your Honor, is not that. The government's position is that this defendant, who admitted he was involved with people who were criminals, and he admitted that he was doing criminal activities, is simply turning off all of his senses to what was really going on around him despite the evidence that he was involved. No, you say he should have asked questions. That's not the same thing as turning your senses off. You seem to think everybody is really nosy, and so of course they ask questions. If they don't ask questions, it's because they've turned off their curiosity. In this case, this defendant was presented with information that would have caused someone in his shoes, if he truly believed that this was human smuggling, that he would have asked questions. Why do you say that? Why do you say that criminals ask questions when they're given a job by another criminal? Why do you say that? There's no evidence that that is customary behavior. That's true, and I'm not saying that all criminals do that. I'm saying this defendant... Why this guy? Why would he? Why would he be nosy? He would ask questions. Why would he ask questions? Why would he care? Because this was different than his previous experience and different than what he had been told. Yeah, it's more lucrative. That's the important thing. Why should he ask questions? Because he would want to know what he's involved in. Okay. I had to pursue one other thing. This has gone away from where I thought we were, frankly. What you're trying to say, I think, is that he was integrally involved in the trafficking. He was busy. He knew who was coming and going and how much and how many, etc. That's correct. Now, in this case, where he claims to be doing the same thing, he obviously... Well, we have that knowingly thing to throw around here, but he obviously knew from the start this wasn't people trafficking. That's correct. It was big money, and all he needed to do was get on the phone and call somebody. That's correct. And that's what the jury was supposed to compare, I guess. That's why you had the expert witness come in and testify all about human trafficking and distinguishing from this. That's true, Your Honor. But now we're talking about having to ask questions and a lot of other things. I thought this was sort of simple. It was a little far-fetched to get the deliberate indifference, but now I'm glad to hear what my colleagues have to say here. But I thought, based on what that was, that was the basis of the comparison. That's true, Your Honor. The government did argue at trial that the defendant did, in fact, know, that he had actual knowledge. And acted accordingly. I'm sorry? With that knowledge. That's why he made very simple transactions each time. He already knew the premise. Yes, exactly. All right. Okay, thank you, Ms. Wells. Mr. Brindley? Anything further? Some of the confusion that comes up, that Your Honor was just referencing about, oh, should he have been asking questions, that's the confusion that was created by injecting the deliberate indifference theory into this case. This is a case where the defendant, not only did he say that he did, he said that they told him that it was human smuggling. So he said he was affirmatively told, and the government said, we have evidence that says he's lying. He knew it was a drug conspiracy. If they want him to charge him with a drug conspiracy, then he should be entitled to have a jury consider his testimony, consider the other evidence, and say, we believe him or we think he's lying. And then it would be a simple case. There was no place for the deliberate indifference theory, and by injecting that theory in this case, the government makes it impossible to say that the jury made the decision based on an appropriate basis rather than an inappropriate one about whether or not he should have been asking questions. The only other thing I would say is, when this comes down to his failure to ask questions, that falls squarely within the indifference issue. If the only thing they can say, well, he should have done more, he should have asked more questions, the best they can say for their argument at that point is that he was indifferent to whatever these red flags were, and that's not deliberate indifference. This court has said before there has to be a deliberate act that he avoids taking, and simply not asking questions is the very kind of indifference this court has said doesn't give rise to this instruction. So we would ask that the conviction for conspiracy be vacated and the case be remanded for further proceedings. Okay, thank you very much, Mr. O'Leary. Thank you, Your Honor. You were appointed. Judge, I was originally appointed in this case, and then after my discharge I agreed.